IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RANDY WALTER BYERS,           )
        Plaintiff,        )
   v.                         )       1:13CV1102
                           )
ALAMANCE COUNTY,              )
NORTH CAROLINA,               )
        Defendant.        )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on Defendant Alamance County's ("Defendant") Motion for Summary Judgment [Doc. #29] and Plaintiff Randy Walter Byers's ("Plaintiff") "Brief in Support of Summary Judgment for Trial Proceeding and Supporting Documents as Evidence for a Summary Judgment Decision to Move to Trial," construed as Plaintiff's Motion for Summary Judgment [Doc. #34]. The motions are fully briefed and ripe for adjudication. For the reasons discussed below, the Court will grant Defendant's motion and deny Plaintiff's motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts are as follows. Plaintiff is an African American man who obtained his college degree from North Carolina Central University ("NCCU"). On September 30, 2010, Plaintiff attended a job fair held at the Holly Hill Mall in Burlington, North Carolina. Defendant participated in the job fair and provided Plaintiff with a handout listing Defendant's current job openings. The list included two positions for which Plaintiff felt he was qualified, those of Clerk to the County Board/Executive Assistant to the Board II ("Clerk position") and Income

Maintenance Caseworker II ("IMC II position"). Plaintiff submitted applications for these two positions at the job fair.

The application materials as to each position included Plaintiff's resume and the Alamance County Application for Employment form. This form nowhere requested applicants to provide information about their racial identity, and Plaintiff's application materials did not voluntarily supply such information. In his deposition, Plaintiff acknowledged that the applications themselves did not ask applicants to identify their racial or ethnic backgrounds. Plaintiff believed that an "EEOC form" may have been included with his application, but could not recall for certain. (Byers Dep. [Doc. #36-1], at 122:3-123:8.) Plaintiff's application materials referenced Plaintiff's educational background, including that he received a bachelor of arts degree from NCCU, which is a historically black college or university ("HBCU"). Plaintiff's materials did not allude to this characteristic of his alma mater. Plaintiff acknowledged in his deposition that white students attend NCCU, but that "it is a majority black school" and "is known as a historically black university." (Id. at 122:24-123:12.)

Plaintiff's respective applications were considered separately through independent application and interview processes, and he was not invited to interview for either the IMC II position or the Clerk position. On November 8, 2010, Defendant hired Kristine Gamblin to fill the IMC II position for which Plaintiff's application was considered. Latawnya Hall, an African American woman, was directly involved in hiring for the three IMC II vacancies. In her affidavit, Ms. Hall explained that she currently serves as the Social Work Program Manager (Adult and Family Services) for the Alamance County Department of Social Services

2

("ACDSS"). In the fall of 2010, when Plaintiff applied for the IMC II position, Ms. Hall was employed as the Economic Services Program Manager for ACDSS. Ms. Hall confirmed that the application forms for the IMC II positions did not contain any questions asking applicants to disclose their racial or ethnic background. If Plaintiff had submitted his application directly to ACDSS, his application would have included an attachment entitled "Alamance County Application Attachment Sheet—Equal Opportunity Information." (Hall Aff. [Doc. #32], at ¶ 6.) This form requested gender, age, and ethnic background information from applicants, but did not request applicants' names. The form included a disclaimer explaining its purpose in tracking equal employment statistical information, and stating that "[t]he information requested below will in no way affect you as an applicant." (Id. at ¶ 6.) However, ACDSS received Plaintiff's application through the County Human Resources Department after Plaintiff submitted his application at the September 30, 2010 job fair. According to Ms. Hall, because Plaintiff's application was not submitted directly to ACDSS, it did not include the Equal Opportunity Information attachment, and Plaintiff's IMC II application did not otherwise contain any racial or ethnic background information.

The applications for the IMC II positions were carefully and systematically reviewed by ACDSS. More than 92 individuals, including Plaintiff, applied for the three IMC II vacancies. These 92 applications were divided into three smaller pools according to the three IMC II open positions. Ms. Hall completed an initial, independent review of the applications. She "used a consistent and uniform screening criteria" consisting of nine specific factors: "(a) nature and consistency of the applicant's work history, (b) administrative work experience, (c) data entry

3

experience, (d) customer service experience, (e) interviewing experience, (f) level of client/customer interactions, (g) accounting experience, (h) knowledge or work experience with the DSS client population, and (i) knowledge of computer systems." (Id. at ¶ 10.) Based on this initial screening, Ms. Hall concluded that some of the applicants, including Plaintiff, "were not qualified for further consideration of the IMC II position." (Id. at ¶ 7.) These applicants were eliminated from the field of applicants going forward. As a result, Plaintiff's application did not progress to the next stage of the application evaluation process.

The applications for the IMC II positions which advanced beyond Ms. Hall's screening were then reviewed by two of Ms. Hall's subordinates, Eva Fulcher and Lisa Lloyd, both of whom are white females. Ms. Fulcher and Ms. Lloyd reviewed these applicants according to the nine criteria and determined that 14 of the candidates should continue to be considered for the IMC II positions. Ms. Hall, Ms. Fulcher, and Ms. Lloyd then interviewed each of the 14 candidates and further narrowed the pool to six candidates. This group of six consisted of three African American females, a Hispanic female, and two white females. These candidates were then recommended to the Director and Assistant Director of ACDSS who made the final hiring decisions. The three successful candidates were Kristine Gamblin, a white female, Nanette Davis, an African American female, and Tabitha Tucker, an African American female. When the 92 original applications were initially divided into three smaller pools, Plaintiff's application was in the same pool as Ms. Gamblin's. Plaintiff learned he was unsuccessful as to this position when he contacted Defendant to inquire as to his application.

Plaintiff's application for the Clerk position, which was reviewed separately from his

4

application for the IMC II position, also did not advance far in the application process. On November 15, 2010, Defendant hired Tory Frink, an African American woman, to fill the Clerk position. Sherry Hook, the Director of the Human Resources Department for Defendant, was directly involved in the process of hiring for the Clerk position. In her affidavit, Ms. Hook explained that she assisted in reviewing applications submitted for the Clerk position, including Plaintiff's materials. Ms. Hook also assisted with interviewing candidates for the position. She explained that "[d]uring this entire process, we used a consistent and uniform screening criteria for evaluating the information contained in each job application and its supporting documents (e.g., resumes), if any." (Hook Aff. [Doc. #30], at ¶ 3.) Ms. Hook explained that Plaintiff's application did not demonstrate that Plaintiff had a consistent work history and that his past employment did not involve skills he would need for the Clerk position. Ms. Frink was selected as the successful candidate because of her superior qualifications as compared with other applicants, including her steady, relevant work history and her paralegal certificate. Since her hire in November 2010, Ms. Frink has continued to serve in the Clerk position. Ms. Hook sent Plaintiff a letter on November 10, 2013, informing Plaintiff that he had not been selected for the Clerk position. Plaintiff stated in his deposition that he called Defendant to inquire about the IMC II position at some point, and that he may have received a letter explaining that the position was filled. (Byers Dep. [Doc. #36-1], at 119:22-120:09.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding Defendant's hiring practices toward Plaintiff. The EEOC assigned an investigator, Jeffery Walters, to Plaintiff's case. Mr. Walters eventually sent

5

Defendant a letter pertaining to Defendant's allegedly discriminatory hiring practices toward Plaintiff and two African American women who applied for jobs with Defendant. Mr. Walters sent a proposed conciliation agreement to Defendant regarding Plaintiff's charge, but also included the two African American women as asserted class members to the agreement. After Defendant rejected any such conciliation, the EEOC issued Plaintiff a right-to-sue letter on September 11, 2013. Plaintiff subsequently filed his Complaint [Doc. #1] on December 11, 2013. Defendant filed a Motion to Dismiss [Doc. #10] arguing Plaintiff's Complaint was untimely as not being filed within 90 days of receipt of the right-to-sue letter. This Court rejected Defendant's argument, determining that Plaintiff received the letter on September 14, 2013, and in turn, Plaintiff's Complaint was timely filed within the 90-day period. (See Order, [Doc. #17], at 3.) On April 10, the Parties filed their respective motions for summary judgment.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). "In considering a motion for summary judgment, the district court must 'view the evidence in the light most favorable to the' nonmoving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting Tolan v. Cotton, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (per curiam)). A court's belief that the movant would prevail on the merits at trial is insufficient to grant a motion for summary judgment. Id. The court cannot make credibility determinations or weigh evidence, and "must disregard all

6

evidence favorable to the moving party . . . that a jury would not be required to believe." Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 436 (4th Cir. 2001); see Jacobs, 780 F.3d at 568-69. However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

III. DISCUSSION

Plaintiff asserts that Defendant discriminated against him in the hiring process for the Clerk and IMC II positions on account of his race. Specifically, Plaintiff contends that Defendant knew he was African American because he attended NCCU, an HBCU, and that Plaintiff did not advance in the hiring process because of this alleged racially identifying information. Defendant contends that it did not discriminate against Plaintiff as to either position, and that Plaintiff has not produced direct evidence of discrimination nor has he established a prima facie case using the applicable indirect method of proof. The material facts are not in dispute, and thus summary judgment is proper. As is discussed below, Plaintiff has failed to demonstrate Defendant discriminated against him when filling the Clerk and IMC II positions, and thus Defendant is entitled to judgment as a matter of law.

A. Direct and Indirect Methods of Proof

Under Title VII, employers are prohibited from taking a variety of employment actions against individuals, including failing to hire, "because of such individual's race, color, religion,

7

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a violation of this statute by producing direct evidence of discrimination, or by employing the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); see Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc). Under the McDonnell Douglas burden-shifting "pretext" framework, the plaintiff must first demonstrate a prima facie case of discrimination in hiring by establishing that

> (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination.

Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005); see McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 544-45 (4th Cir. 2003). The purpose of the prima facie case under McDonnell Douglas is to weed out the most common reasons for an adverse employment action, thus creating an inference of discrimination rebuttable by the defendant. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). Once a plaintiff "establishes a prima facie case, the burden of production shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for its actions." Kinser v. United Methodist Agency for the Retarded-Western N.C., No. 14-1955, 2015 U.S. App. LEXIS 8733, at *4-5 (4th Cir. May 27, 2015) (citing Hill, 354 F.3d at 285); see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000). Once the defendant meets this burden, all presumptions of discrimination disappear, and the plaintiff must show that the defendant's

8

proffered reason is in actuality mere pretext for intentional discrimination. Reeves, 530 U.S. at 142-43, 120 S. Ct. at 2106; Hill, 354 F.3d at 285. A plaintiff may satisfy this burden by producing evidence indicating that the defendant's reason was " 'unworthy of credence' or was a cover-up for unlawful discrimination." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 211 (4th Cir. 2014) (quoting Burdine, 450 U.S. at 256, 101 S. Ct. at 1095).

Plaintiff has not produced any direct evidence of discrimination. Instead, his case hinges upon indirect proof of his belief that Defendant did not consider his applications for either position because Defendant inferred Plaintiff's African American race from the mere fact that Plaintiff attended NCCU. Because Plaintiff lacks direct evidence, he must demonstrate a prima facie case under the McDonnell Douglas framework. As to Plaintiff's evidence, the Court acknowledges Defendant's evidentiary concerns as to documents submitted by Plaintiff regarding the present motions. Plaintiff suggests, and Defendant admits, these documents are copied from the EEOC's file on Plaintiff's case; however, Defendant generally contends that these documents are unauthenticated and constitute hearsay or hearsay within hearsay.[1] The documents include what appear to be handwritten and typewritten notes, letters to and from EEOC investigators, an e-mail from Ms. Hook, and application materials of other candidates. It is not clear whether Plaintiff seeks to use statements in the documents for the truth of the

---

[1] Defendant primarily lodges a general objection to all the documents without explaining how each document could not be admissible. Defendant's only specific objection is to certain handwritten notes that appear to be from EEOC interviews with two of Plaintiff's fellow job applicants. These notes, as part of the EEOC file, could be authenticated at trial and would likely be admissible as records of a regularly conducted activity under Federal Rule of Evidence 803(6), or other hearsay exceptions. Moreover, at trial, Plaintiff "could subpoena a witness or present admissible evidence of a particular fact" within these notes. See Hill v. Equifax Info. Servs., LLC, 974 F. Supp. 2d 865, 868-69 (M.D.N.C. 2013).

9

matters asserted or for other purposes.[2]  As noted, Plaintiff is proceeding *pro se*, and as such, the Court is inclined to construe the evidence as admissible where possible.  See Equifax Info. Servs., LLC, 974 F. Supp. 2d at 868-69 (in light of summary judgment standards and *pro se* status of party, court "where possible, assumed Plaintiff could subpoena a witness or present admissible evidence of a particular fact and will award to Plaintiff the benefit of the doubt as to his ability to present admissible evidence at trial"); c.f. Kobe v. Haley, No. 3:11-1146-TMC, 2013 U.S. Dist. LEXIS 113206, at *20-21 (D.S.C. Aug. 12, 2013) (explaining that the 2010 amendments to Rule 56 removed the requirement that documents in support of summary judgment be authenticated, and that the new standard is not whether the material has already been submitted in an admissible form, but whether it cannot be submitted in an admissible form).  Regardless, even assuming that these documents or information contained in the documents could be authenticated and admitted into evidence, the documents do not assist Plaintiff in establishing his prima facie case or bring a material fact into dispute.

Defendant asserts that Plaintiff cannot establish a prima facie case as to either the Clerk position or IMC II position, and that Defendant has provided legitimate, nondiscriminatory reasons for not hiring Plaintiff, which Plaintiff has not shown are pretetextual.  The Parties do not dispute that Plaintiff is a member of a protected class or that he applied for the positions, and because Plaintiff attained a four-year degree, he appears to have met the minimum qualifications for each position.  (See Ex. 16 to Byers Dep [Doc. #36-3] (listing minimum

---

[2] For example, the application materials are likely most useful in showing what information was available to Defendant in making hiring decisions, rather than for the truth of the matters asserted in the statements made by candidates in their applications.

qualifications for IMC II position as "[g]raduation from an accredited associate degree program," or other combinations of experience and education, and listing the minimum qualifications for the Clerk position as willingness to attend and complete certain County Clerk-related courses.))[3] Thus, the Court must consider whether Plaintiff satisfied the fourth element of a prima facie case, that of showing circumstances giving rise to an inference of discrimination, for each position, and in turn, whether Defendant has provided nondiscriminatory reasons for its hiring decisions as to Plaintiff. The Court next turns to consider Plaintiff's evidence as to each of the two positions for which he applied. In doing so, the Court views the undisputed facts in the light most favorable to Plaintiff when considering Defendant's motion. Because even in this favorable light Plaintiff has failed to provide proof of discrimination, the Court need not re-examine the facts in the light most favorable to Defendant before determining Defendant is entitled to judgment as a matter of law.

B. The IMC II Position

Plaintiff asserts that Defendant discriminated against him on account of his race, as inferred from his resume, when Defendant conducted its hiring process for the IMC II position. In advancing this contention, Plaintiff centers his argument on attacking the successful candidate's, Kristine Gamblin's, application. Defendant asserts it is entitled to summary judgment because first, Plaintiff cannot establish a prima facie case, and second, it had a legitimate, nondiscriminatory reason for not hiring Plaintiff.

---

[3] While Defendant states that Plaintiff cannot satisfy the third element of the prima facie case, that is, showing he was qualified for the position, Defendant never makes any arguments specifically indicating Plaintiff was not qualified for the position.

11

In advancing its arguments, Defendant emphasizes that Latawnya Hall, who conducted the initial screening of applications for the IMC II position, is African American and thus within the same protected class as Plaintiff. As highlighted by Defendant, Plaintiff's application was never reviewed by anyone outside his protected class since Ms. Hall was the only one to review and ultimately reject Plaintiff's application. Courts have been skeptical of such discrimination claims when the plaintiff and the decisionmaker are of the same protected class. E.g. Raiford v. N.C. Cent. Univ., No. 12CV548, 2015 U.S. Dist. LEXIS 79710, at *46-48 (M.D.N.C. June 19, 2015); Smith v. Voorhees College, No. 5:05-1911-RBH-BM, 2007 U.S. Dist. LEXIS 74766, at *21 n.7 (D.S.C. June 14, 2007) (magistrate judge's recommendation), adopted by 2007 U.S. Dist. LEXIS 72329; Dewitt v. Mecklenburg Cnty., 73 F. Supp. 2d 589, 598-99 (W.D.N.C. 1999); Dungee v. Northeast Foods, 940 F. Supp. 682, 688 n.3 (D.N.J. 1996). In such situations, courts typically find that the plaintiff has failed to establish a prima facie case for lack of circumstances supporting an inference of discrimination. See Voorhees College, 2007 U.S. Dist. LEXIS 74766, at *21 n.7; Dewitt, 73 F. Supp. 2d at 598-99; Parker v. Magna Innertech-Spartanburg, No. 6:09-773-JMC-KFM, 2010 U.S. Dist. LEXIS 138620, at *22-23 (D.S.C. Nov. 29, 2010) (where plaintiff was hired and fired by the same person, who was within the same protected class as plaintiff, plaintiff failed to establish fourth element of prima facie case). While the fact that the successful candidate was outside of Plaintiff's protected class may satisfy the fourth prong of the prima facie case, the circumstances here suggest otherwise. Any inference of discrimination is negated by the fact that a member of Plaintiff's protected class made the decision not to hire or otherwise consider Plaintiff's application.

12

Additionally, although Plaintiff suggests Defendant assumed his racial identity because he attended NCCU, Plaintiff provides no evidence that anyone evaluating his application made such an assumption, which undercuts an argument that Defendant intentionally discriminated against Plaintiff. Gladden v. Locke, No. PJM 10-1756, 2011 U.S. Dist. LEXIS 70581, at *15-16 (D. Md. June 30, 2011) ("Without at least some plausible evidence indicating that at least one of the NOAA officials was aware of Gladden's race, his prima facie case of race discrimination falters.") Ms. Hall explained that Plaintiff's application materials did not disclose his race or ethnicity, and that even if they had, she would not have discriminated against him on account of his race because she too is African American. (Hall Aff. [Doc. #32], at ¶ 15.) Ms. Hall attested that she knows NCCU is attended by students who are not African American and thus would not have assumed that Plaintiff was African American based solely on his having attended this institution. (Id. at ¶¶ 17-18.) Defendant also emphasizes that while the one IMC II position for which Plaintiff was considered was filled by an individual outside his protected class, two other IMC II positions were filled by African Americans, further refuting Plaintiff's claim that Defendant's rejection of Plaintiff's application was a result of racial animus. Plaintiff's inability to provide any evidence that Ms. Hall was even aware of his race, coupled with the fact that Ms. Hall is herself African American, further belies his claim. As such, the Court finds that Plaintiff has failed to establish a prima facie case as to the IMC II position.

Even if the Court somehow found that the instant circumstances give rise to an inference of discrimination, Defendant has provided a legitimate nondiscriminatory reason for its hiring decision, and Plaintiff has not produced evidence that the reason is mere pretext. When

13

conducting her initial screening of the applications for the IMC II position, Ms. Hall evaluated the applications using nine criteria, which erodes Plaintiff's ability to show discrimination by Defendant. Tsai v. Md. Aviation, 306 Fed. Appx. 1, 7 (4th Cir. 2008) ("An employer's reliance on objective evaluation factors defeats a discrimination claim unless the plaintiff offers specific evidence of pretext."); see McNeal v. Montgomery Cnty., 307 Fed. Appx. 766, 774 (4th Cir. 2009) (where successful candidate for position was determined to be better-qualified based on a ratings system, plaintiff failed to show the determination was mere pretext for discriminatory motive). Ms. Hall explained that while she cannot remember the exact reasons she originally determined Plaintiff should not be further considered for the IMC II position, after subsequently reviewing his materials, Ms. Hall believes Plaintiff did not meet a number of the screening criteria she used to evaluate applications. (Hall Aff. [Doc. #32], at ¶ 16.) Ms. Hall averred that Plaintiff's

> application and resume reveal that he has not held any significant position of full time employment for any substantial length of time. In addition, a number of the jobs listed in his work history were part-time positions with temporary employment ("temp") agencies in positions which would not equip him with the skills needed to perform the IMC II position. In particular, much of his work experience with Premier Staffing and Applied Textiles took place in a factory and/or warehouse setting.

> Id.

In the face of the above-mentioned evidence of Defendant supporting an inference of non-discrimination, Plaintiff has failed to produce persuasive evidence of pretext and intentional discrimination. Instead, Plaintiff argues that Ms. Gamblin's application was incomplete and inferior to Plaintiff's, because Gamblin did not fill out portions of her application pertaining to

14

special skills or describing her job duties, nor did she list any references. Plaintiff also highlights that Gamblin purportedly did not disclose a DUI conviction in her application materials, and instead, that she disclosed it during her interview for the position. Plaintiff's attacks, however, do not demonstrate that Ms. Hall's decision not to advance Plaintiff's application beyond the initial screening was motivated by race or that Defendant's offered reasons for Plaintiff not advancing in the application process are otherwise merely pretextual. Plaintiff's attacks on Ms. Gamblin's credentials do little to illustrate pretext. A plaintiff "cannot use his own judgment to evaluate his qualifications." EEOC v. Mount Vernon Holdings, LLC, No. 1:09cv1099, 2010 U.S. Dist. LEXIS 73746, at *18 (E.D. Va. July 20, 2010) (citing Anderson., 406 F.3d at 269); see Evans, 80 F.3d at 960; Jiminez v. Mary Washington College, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment."). Here, Plaintiff's self-analysis of his application materials compared with Ms. Gamblin's does not demonstrate Defendant discriminated against him on account of his race. See Wilder v. Columbia Fire Dep't, No. 3:07-976-CMC-BM, 2008 U.S. Dist. LEXIS 125075, at *10 (D.S.C. June 30, 2008) (finding that the plaintiff's argument about the "relative qualifications of [the successful candidate] for the position versus his own qualifications" failed to establish that plaintiff did not receive the position due to his race).

In addition to his own application materials, Plaintiff points to another African American applicant, Alicia Stocks, who disclosed in her initial application that she had a criminal history.[4]

---

[4] Plaintiff also appears to assert that Defendant had a policy of excluding applicants with criminal histories, but that Defendant applied this policy unevenly so as to exclude African

15

Unlike Plaintiff, Ms. Stocks advanced beyond the initial screening and eventually interviewed for the position despite the disclosure.[5] Other than this example and his own experience, Plaintiff has not produced any evidence supporting the claim that Defendant has a policy or practice of excluding applicants with criminal histories generally, or that Defendant applies such a policy only as against African American applicants. Plaintiff's only evidence on this point is a letter from the County Attorney, sent in response to Plaintiff's EEOC charge, stating that Plaintiff's criminal history disadvantaged him in the hiring process. The letter does not reveal a policy or state that Plaintiff's criminal history disqualified him. Plaintiff has failed to demonstrate that he was eliminated from consideration because of his criminal history while Ms. Gamblin was not, and that such a disparity was due to the applicants' respective races.

Plaintiff has not provided any evidence that Defendant's reasons for not hiring him for the IMC II Position are in actuality pretext for discrimination. As already noted, Plaintiff's application did not identify him as an African American, and even if it did, he has not shown that Ms. Hall, who was solely responsible for eliminating Plaintiff from consideration, would have inferred Plaintiff was African American base on his degree from NCCU. Moreover, that two other IMC II positions were filled by African Americans further illustrates a lack of

---

American applicants. Although Plaintiff uses the phrase "disparate impact" in making this argument, he does not appear to argue that Defendant had a facially neutral policy with a resulting disparate impact on a class of individuals; instead, he argues that a policy was not applied uniformly so as to intentionally exclude a particular class. The Court construes Plaintiff's claim as part of his general discrimination and disparate treatment claim, rather than as disparate impact claim.

[5] Within his argument on this point, Plaintiff also notes another African American, Teresa Collins, who applied for the job but who ultimately did not get the job. However, Plaintiff does not allege or provide evidence regarding Ms. Collins's disclosure of any criminal history.

discriminatory motive on the part of Defendant. In light of the totality of the evidence, Plaintiff's attacks on Ms. Gamblin's application materials do not bring into dispute a material fact, nor do they establish any sort of pretext on the part of Defendant. As such, Plaintiff has not carried his burden under the McDonnell Douglas burden-shifting framework and Defendant is entitled to judgment as a matter of law with respect to the IMC II position.

    C.      The Clerk Position

Plaintiff also argues that he was not hired for the Clerk position because of his race. Plaintiff's claim as to the Clerk position fails for the same reasons his claim as to the IMC II position fails, namely, that Plaintiff has not produced evidence as to circumstances supporting an inference of discrimination, nor has he shown that Defendant's reasons for not interviewing or hiring him were pretextual. Plaintiff again devotes much of his argument to attacking the successful applicant's credentials, as well as other applicants who were offered interviews. Defendant again counters by demonstrating that Plaintiff has not met his burden of providing a prima facie case, and that Defendant has articulated a legitimate reason for not interviewing or hiring Plaintiff.

In particular, Defendant argues that Plaintiff cannot satisfy the fourth element of the prima facie case—that of demonstrating circumstances supporting an inference of discrimination—because the successful candidate is of the same protected class as Plaintiff. Tory Frink, an African American woman, was hired for the position in November 2010, and has remained in that position since being hired. Typically "replacement within the protected class gives rise to an inference of non-discrimination," and does not fulfill the fourth prong of the

17

prima facie case, however, the Fourth Circuit has acknowledged that an employer might hire "someone from within the plaintiff's protected class in order 'to disguise its act of discrimination toward the plaintiff.'" Miles v. Dell, Inc., 429 F.3d 480, 488 (4th Cir. 2005) (quoting Brown v. McLean, 159 F.3d 898, 905-06 (4th Cir. 1998)). While the hiring of a protected class member might be pretextual, Plaintiff has not argued or provided evidence of such in the instant case, nor has he directed the Court to any circumstances suggesting an inference of discrimination on the part of Defendant. See Brown, 159 F.3d at 905-06 (noting possible exceptions to fourth prong, and that none were applicable particularly where plaintiff did not present evidence of such exceptions). Additionally, as mentioned above regarding the IMC II position, Plaintiff's failure to show Defendant was aware of his race further hampers his attempt to fulfill the fourth element of the prima facie case. The fact that Defendant ultimately hired someone with the same racial identity as Plaintiff severely undercuts any possible inference of discrimination. As such, Plaintiff has not established a prima facie case of race discrimination as to the Clerk position.

Moreover, even if Plaintiff could establish circumstances giving rise to an inference of discrimination, Defendant has provided evidence of a nondiscriminatory reason for hiring Ms. Frink and not Plaintiff. In particular, Ms. Frink had additional, superior qualifications to Plaintiff in that she had a consistent employment history including significant customer service experience, and she had a paralegal certificate which gave Ms. Frink relevant skills and insight into legal research and authorities. In contrast, Defendant explained that Plaintiff's past work experience was inconsistent and not as relevant as Ms. Frink's. Plaintiff has not shown that

18

these reasons are mere pretext for discrimination, as is required at the final burden-shifting stage of the McDonnell Douglas framework. To the extent Plaintiff argues that the candidates who advanced to the interview stage, including Ms. Frink, were not as qualified as Plaintiff, the argument fails.[6] As noted above regarding the IMC II position, Plaintiff's subjective assessment of his qualifications as against other candidates' qualifications is irrelevant. E.g. Evans, 80 F.3d at 960 ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."). As such, the Court finds that Plaintiff has failed to show Defendant discriminated against him on account of his race as to the Clerk Position.

IV. CONCLUSION

Even when viewing the record in Plaintiff's favor for purposes of Defendant's Motion for Summary Judgment, the Court finds that Plaintiff has failed to make out a prima facie case of discrimination as to both the Clerk position and the IMC II position. Defendant is thus entitled to judgment as a matter of law. By extension, when viewing the facts in the light most favorable to Defendant for purposes of Plaintiff's motion, the undisputed facts likewise demonstrate that Plaintiff has failed to demonstrate he should be accorded summary judgment. For the reasons discussed above, the Court denies Plaintiff's Motion for Summary Judgment [Doc. #34] and grants Defendant's Motion for Summary Judgment [Doc. #29].

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc.

---

[6] In making this argument, Plaintiff refers to a document labeled as "Vacancy Posting for Clerk to the Board/Executive Assistant II" which he asserts provided a detailed description of qualifications for the position. However, neither Plaintiff nor Defendant has included such a document as part of the record before the Court.

19

#34] is hereby DENIED, Defendant's Motion for Summary Judgment [Doc. #29] is hereby GRANTED, and that this action is DISMISSED with prejudice. As all claims in this action are now dismissed, a Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 15th day of July, 2015.

/s/ James A. Beaty
United States District Judge